1          UNITED STATES DISTRICT COURT

2               DISTRICT OF OREGON

3

4  UNITED STATES of AMERICA,         )
                                     )
5                     Plaintiff,     ) No. CR-04-243-KI
                                     )
6               vs.                  ) December 20, 2010
                                     )
7  STEVEN GABRIEL MOOS,              ) Change of Plea
                                     )
8                     Defendant.     ) Portland, Oregon
   _____)
9

10            TRANSCRIPT OF PROCEEDINGS

11     BEFORE THE HONORABLE GARR KING, DISTRICT COURT

12

13

14

15 APPEARANCES:

16 FOR THE PLAINTIFF:       MICHELLE KERIN
                            United States Attorney's Office
17                          1000 SW 3rd, 7th Floor
                            Portland, OR 97209
18
   FOR THE DEFENDANT:       STEPHEN R. SADY
19                          Federal Public Defender's Off.
                            101 SW Main St., Suite 1700
20                          Portland, OR 97204

21

22

23

24

25

FILED'11 FEB 2 13:06USDC-ORP

```
 1                UNITED STATES DISTRICT COURT

 2                     DISTRICT OF OREGON

 3

 4   UNITED STATES of AMERICA,        )
                                      )
 5                      Plaintiff,    )  No. CR-04-243-KI
                                      )
 6              vs.                   )  December 20, 2010
                                      )
 7   STEVEN GABRIEL MOOS,             )  Change of Plea
                                      )
 8                      Defendant.    )  Portland, Oregon
     _____)
 9

10              TRANSCRIPT OF PROCEEDINGS

11      BEFORE THE HONORABLE GARR KING, DISTRICT COURT

12

13

14

15   APPEARANCES:

16   FOR THE PLAINTIFF:      MICHELLE KERIN
                             United States Attorney's Office
17                           1000 SW 3rd, 7th Floor
                             Portland, OR 97209
18
     FOR THE DEFENDANT:      STEPHEN R. SADY
19                           Federal Public Defender's Off.
                             101 SW Main St., Suite 1700
20                           Portland, OR 97204

21

22

23

24

25
```

```
 1                      P-R-O-C-E-E-D-I-N-G-S

 2              THE CLERK:  All rise.  This is the United

 3   States District Court, Judge King presiding, Case No.

 4   CR-04-243-HA, United States versus Moos.

 5              MR. SADY:  Good afternoon, Your Honor.

 6              MS. KERIN:  Good afternoon, Your Honor.

 7   We're here in United States versus Steven Gabriel Moos,

 8   Case No. CR-04-243.  Mr. Moos is present in the

 9   courtroom.  He's in custody and represented by

10   Steve Sady of the Federal Public Defender's office.

11   Michelle Kerin and Allan Garten for the government.

12   This is the time for defendant's change of plea and

13   detention hearing.

14              The government is ready to proceed.

15              THE COURT:  Thank you, Ms. Kerin.

16              Mr. Sady, good afternoon.

17              MR. SADY:  Good afternoon, Your Honor.

18   Through the courtesy of the clerk, we've provided the

19   Court with a petition and attached plea agreement that

20   have both been signed by myself and defendant in the

21   case.  We're ready to proceed with the change of plea.

22              THE COURT:  All right.  Which count is

23   involved?

24              MR. SADY:  Count 3, Your Honor.

25              THE COURT:  Okay.  Is it "Moss" or "Moos" --
```

```
 1              MR. SADY:  "Moss," Your Honor.

 2              THE COURT:  Mr. Moos, would you stand,

 3  please, and be sworn?

 4                  (Defendant sworn in.)

 5              THE COURT:  Mr. Moos, you've taken an oath to

 6  tell the truth.  I'll be asking you a number of

 7  questions this afternoon, and you must give me truthful

 8  answers to those questions.  Do you understand that?

 9              THE DEFENDANT:  Yes, I do.

10              THE COURT:  And have you taken any medicine

11  or drugs recently, anything that would make it hard for

12  you to understand what's happening in court today?

13              THE DEFENDANT:  No, I haven't.

14              THE COURT:  Okay.  If you don't understand

15  anything that's happening, if you have any questions at

16  any time, please tell me or tell your lawyer.  Will you

17  do that?

18              THE DEFENDANT:  Yes, I will.

19              THE COURT:  Have you gone over the indictment

20  with your lawyer and discussed with him the charges

21  against you?

22              THE DEFENDANT:  Yes.  Thoroughly.

23              THE COURT:  And have you had an opportunity

24  to ask your lawyer all the questions you have about

25  these charges?
```

```
 1              THE DEFENDANT:  Yes, I have.

 2              THE COURT:  Do you feel you understand both

 3    the nature and the seriousness of the charges?

 4              THE DEFENDANT::  I do.

 5              THE COURT:  Are you satisfied with the help

 6    and advice that Mr. Sady has given you as your lawyer

 7    in this matter?

 8              THE DEFENDANT:  Yes, I am.

 9              THE COURT:  Now, I've received today a copy

10    of a petition to enter a plea of guilty, and it appears

11    that you've signed that petition, and it was signed

12    today, the 20th of December.  Is that your signature on

13    the petition?

14              THE DEFENDANT:  Yes.  I just signed it.

15              THE COURT:  Attached to that is a plea

16    agreement dated December 19th of this year, and it

17    appears that you signed that on the 20th, as well.  Is

18    that your signature on that?

19              THE DEFENDANT:  Yes.  Yes.

20              THE COURT:  All right.  At this point I'm

21    going to ask Ms. Kerin to summarize the terms of the

22    plea agreement.  I'd like you to listen carefully, as

23    I'll have some questions for you when she finishes.

24              And you may be seated while she does that.

25              Ms. Kerin?
```

1          MS. KERIN:  Yes.  Thank you, Your Honor.

2          The plea agreement between the government and

3    the defendant in provision one, the agreement indicates

4    that it is an agreement only between the United States

5    Attorney's Office, the defendant, and no other state or

6    federal or local jurisdiction.

7          Provision two indicates that the defendant

8    has agreed to plead guilty to Count 3 of the

9    indictment, which charges the crime of false statements

10   to a government agency in violation of 18 USC 1001.

11         In addition, provision two indicates that the

12   United States Attorney's Office will recommend to

13   Washington County District Attorney's Office, who also

14   has pending charges against Mr. Moos, to permit the

15   defendant to plead guilty to a misdemeanor charge.  The

16   provision two acknowledges that the US Attorney's

17   Office's recommendation is only that, a recommendation,

18   and has no binding authority upon the Washington County

19   District Attorney's Office.

20         In addition, the parties have agreed that

21   following the defendant's entry of plea, the United

22   States Attorney's Office will not contest the release

23   of Mr. Moos pending his sentencing.  And, in addition,

24   the United States Attorney's Office will recommend to

25   the Washington County District Attorney's Office that

1   it lift its current detainer and permit Mr. Moos to be

2   released pending sentencing in that matter, as well.

3           Subsection 4 of the agreement advises

4   Mr. Moos of the maximum penalties under 18 USC Section

5   1001 which are five years imprisonment, a fine of

6   $250,000, and three years of supervised release, as

7   well as a hundred-dollar fee assessment.  In Subsection

8   4 of the agreement, the defendant agrees to pay the

9   hundred-dollar fee assessment by the time of entry of

10  guilty plea or explain to the Court why he can't.

11          Subsection 5 is an agreement that after the

12  defendant is sentenced, this -- the US Attorney's

13  Office, the government, will move to dismiss the

14  remaining counts, which are Counts 1, 2, and 4 and

15  agrees not to bring additional charges arising out of

16  the investigation that led to the indictment in this

17  matter known to the US Attorney's Office at this time.

18          Subsection 6 advises the defendant that the

19  Court must determine the applicable advisory guideline

20  range under the sentencing guidelines.

21          Subsection 7 lays out what the parties agree

22  is the relevant conduct under the advisory sentencing

23  guidelines.  And, specifically, that the base offense

24  level is six.  The parties do not believe that other

25  offense levels are applicable.

1          Subsection 8 provides that the defendant must

2   demonstrate to the Court that he admits and accepts

3   responsibility under the applicable guideline range.

4   And that if he does so between now and the time of

5   sentencing, the US Attorney's Office will agree to a

6   two-level downward departure for such acceptance.

7          Subsection 9 indicates that at the time of

8   sentencing, so long as the defendant demonstrates the

9   acceptance of responsibility, the United States

10  Attorney's Office will recommend to this Court a

11  within-guideline sentence as its position at

12  sentencing.

13         Subsection 10 binds the US Attorney's Office

14  not to seek any additional upward departures,

15  adjustments, or variances to the advisory sentencing

16  guideline range.

17         Subsection 11 outlines the waiver of appeal

18  that the defendant has agreed to.  Specifically, the

19  defendant knowingly and voluntarily agrees to waive his

20  right to appeal if -- unless the sentence imposed

21  exceeds the statutory maximum or the Court arrives at

22  an advisory guideline range by applying an upward

23  departure under the guidelines Chapters 4 or 5(K) or

24  that the Court exercises discretion under 18 USC

25  Section 3553 to impose a sentence which exceeds the

1    advisory guideline range.

2            In addition, the defendant waives his right

3    to file a collateral attack, including a motion under

4    28 USC Section 2255.

5            Subsection 12 advises the defendant that the

6    Court is not bound by the recommendations by the

7    parties and that it will make its own determination

8    under its responsibilities under 18 USC 3553(a).

9            Subsection 13 directs the US Attorney to

10   fully inform the presentence writer and the Court of

11   the facts under the law related to the defendant's

12   case.

13           Subsection 14 provides the penalties for

14   breach of the agreement between the US Attorney's

15   Office and defendant.  Specifically, if the defendant

16   commits any offenses between signing this agreement and

17   sentencing or breaches any other terms, the United

18   States Attorney's Office is relieved of its obligations

19   under the agreement, but the defendant may not withdraw

20   his guilty plea.

21           Finally, Subsection 15 indicates that all of

22   the promises and the agreements between the parties are

23   memorialized in the agreement before the Court.

24           THE COURT:  Okay.  Ms. Kerin, have you made

25   any preliminary determination of the advisory guideline

1  range in this case?

2           MS. KERIN:  Yes, Your Honor.  The advisory

3  guideline range is zero to six months.

4           THE COURT:  All right.  Thank you.

5           Mr. Moos, would you stand, please?

6           Mr. Moos, have you been able to discuss the

7  terms of the plea agreement with your lawyer and

8  discuss with him how they will affect you?

9           THE DEFENDANT:  Yes, I have.

10          THE COURT:  Do you feel you understand the

11  terms of the plea agreement?

12          THE DEFENDANT:  Unfortunately, I do.

13          THE COURT:  All right.  Have any promises

14  been made to you regarding your sentence other than

15  what's set forth in that plea agreement?

16          THE DEFENDANT:  No promises.

17          THE COURT:  Has anyone threatened you

18  intimidated you in any way to get you to plead guilty

19  when you didn't really want to?

20          THE DEFENDANT:  No.

21          THE COURT:  Well, this is a felony offense.

22  Is that correct, Ms. Kerin?

23          MS. KERIN:  Yes, Your Honor.

24          THE COURT:  And after sentencing, a judgment

25  will be entered against you that may deprive you of

1  valuable civil rights, such as the right to vote, the

2  right to hold public office, the right to serve on a

3  jury, the right to possess any kind of firearm.

4            Are you aware of those facts?

5            THE DEFENDANT:  Yes, I am.

6            THE COURT:  The maximum sentence that could

7  be imposed upon you for the crime to which you are

8  pleading guilty is five years in prison and a fine of

9  up to $250,000.

10           You understand that's the maximum sentence?

11           THE DEFENDANT:  Yes, I do.

12           THE COURT:  You will have to pay a fee

13 assessment of $100.  Are you aware of that?

14           THE DEFENDANT:  Yes, I am.

15           THE COURT:  All right.  Now, it's my

16 obligation to determine a just and reasonable sentence

17 for your case.  I won't be able to make that

18 determination until after a presentence report is

19 prepared.  That report is prepared by the probation

20 office.  It gives me information about the offense

21 conduct.  It gives me information about you and your

22 background.

23           Now, at the sentencing hearing I will

24 consider any objections to the presentence report.  I

25 will make rulings.  I will determine an advisory

1   guideline range based on the facts that are presented

2   to me.

3          Now, in determining the appropriate sentence

4   for your case I must consider the advisory guideline

5   range, I will consider the plea agreement between the

6   parties, and I will consider all other appropriate

7   factors that are set forth by the law.

8          Now, you and your lawyer may have discussed

9   possible sentences, but do you understand that the

10   sentence the Court imposes may be different from any

11   estimate that your attorney has given you?

12          THE DEFENDANT:  I do understand.

13          Can I ask?  Will you be sentencing me?

14          THE COURT:  I'm sorry?

15          THE DEFENDANT:  Will you be sentencing me?

16          THE COURT:  I will be sentencing you unless

17   something happens to me.

18          THE DEFENDANT:  Okay.  All right.

19          THE COURT:  Now, what is the reason for

20   asking that question?

21         MR. SADY:  Your Honor, I indicated that there

22   was an uncertainty about whether Judge Haggerty,

23   because he had originally been assigned to the case,

24   would be continuing.

25          THE COURT:  All right.  That case has been

1   reassigned to me.  Isn't that correct, Mary?

2            THE CLERK:  Yes.

3            MR. SADY:  Thank you, Your Honor.

4            THE COURT:  All right.  Now, if you're

5   sentenced to prison, you are not entitled to parole.

6   You'll have to the serve the full sentence, except for

7   any credit for good behavior that you've earned.

8            The maximum credit for good behavior is 47

9   days for each year of imprisonment served, but credit

10  for good behavior does not apply to a sentence of one

11  year or less.

12            Do you understand that?

13            THE DEFENDANT:  Yes, I do.

14            THE COURT:  If you were sentenced to prison,

15  there would be a term of supervised release to follow

16  of up to three years.  And during that time if you were

17  to violate any of the terms of your supervised release,

18  you could be sentenced to additional prison time.

19            Do you understand that?

20            THE DEFENDANT:  Yes, I do.

21            THE COURT:  Now, there is a pending charge in

22  Washington County.  Mr. Sady, what's the status there?

23            THE DEFENDANT:  Your Honor.  Greg Scholl from

24  the Washington County Public Defender's Office is

25  representing him on that matter.  There had been

 1   recommendations made by the United States Attorney's

 2   Office.  We are -- there has been some new information

 3   that we are concerned about, but we are satisfied that

 4   the US Attorney's Office will do all it can to make

 5   those recommendations heard in Washington County.

 6           THE COURT:  All right.  Have you discussed

 7   with your client that there's nothing I can do about

 8   those state charges; that I do have discretion to

 9   consider whether a federal sentence should be served

10   concurrently or consecutively with the state sentence,

11   but if he's sentenced on this federal charge before the

12   state sentence, I cannot make that concurrent?

13           Have you talked to him about that?

14           MR. SADY:  Your Honor, I believe that the

15   anticipation would be that the -- that the federal

16   matter would go first.  I think that's how the parties

17   are anticipating it.  And that the -- it's been

18   articulated in the agreement as a nonbinding

19   recommendation.  So it's understood that those matters

20   are different; that Mr. Scholl will be dealing directly

21   with Washington County.

22           The most immediate thing of interest is that

23   we have been -- that the United States Attorney's

24   Office is in touch regarding the release decision,

25   because obviously that makes a lot of difference to us.

1  We are hoping that they will either effectuate

2  withdrawal of the warrant or get him in court in

3  Washington County as quickly as possible for a release

4  there and then let that case take its course.

5          THE COURT:  All right.  That's fine.  Thank

6  you.

7          Now, you have waived many of your appeal

8  rights in your plea agreement.  I want to make sure you

9  understand that ordinarily you can appeal your

10 conviction if you believe the guilty plea was unlawful

11 or if there was some other fundamental defect in the

12 proceeding that you haven't waived by entering a guilty

13 plea.

14         You have a legal right to appeal your

15 sentence if you feel the sentence is contrary to law,

16 but you can give that right up as part of a plea

17 agreement.  And in your plea agreement you have given

18 up most of your appeal and post-conviction relief

19 rights.

20         Have you discussed that with your lawyer?

21         THE DEFENDANT:  I understand it, Your Honor.

22         THE COURT:  Okay.  Now, the plea agreement

23 does include certain recommendations to me and

24 agreements that have been made between your attorney

25 and the attorney for the government.  I do carefully

1  consider these recommendations, but I'm not bound by

2  recommendations or agreements.  If I rejected any

3  recommendations or agreements and if your sentence

4  turned out to be different than you may have

5  anticipated, you may not withdraw your plea.  Do you

6  understand that?

7          THE DEFENDANT:  I do.

8          THE COURT:  I want to explain the rights you

9  have if you continued to plead not guilty and went to

10 trial on these charges against you.  You have the right

11 to be presumed innocent.  You have the right to a trial

12 by jury.  The government must prove every element of

13 each charge against you beyond a reasonable doubt.  You

14 have the right to the continued assistance of an

15 attorney, including representation at trial.  You have

16 the right to see and hear witnesses and have them

17 cross-examined in your defense and the right to have

18 witnesses brought to court to testify for you.

19          You can't be forced to testify unless you

20 voluntarily choose to do so in your defense.

21          If you decided not to testify or not to put

22 on any other evidence in your defense, those facts

23 cannot be used against you.

24          Now, if you enter a guilty plea, there will

25 be no trial, and you will have given up these trial

1   rights I've just described.

2          Do you understand that?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Okay.  At this point I'm going to

5   ask Ms. Kerin to outline the nature of the charge

6   against you in Count 3, the essential elements that the

7   government would have to prove, and the evidence that

8   the government could produce to support the charge.

9          Listen carefully to her as I'll have

10  questions for you on this subject when she finishes.

11         You may be seated at this time.

12         Ms. Kerin.

13         MS. KERIN:  Thank you, Your Honor.  Count 3

14  charges a violation of 18 USC 1001.  False statements

15  to a government agent.  To prove this case at trial,

16  the government would have to introduce evidence to

17  prove beyond a reasonable doubt that the defendant made

18  a false statement in a matter within the jurisdiction

19  of a federal agency.  Two, that the defendant acted

20  willfully, that is deliberately, with knowledge that

21  the statement was untrue.  And, finally, the government

22  would have to demonstrate that the statement was

23  material to the government's agency -- to the

24  government agency's activities or decision.

25         At trial the government would introduce both

1  documents and testimony that in or about January of

2  2003 the defendant knowingly and willfully made a false

3  and fraudulent representation of a material fact within

4  the -- in a matter within the jurisdiction of the Drug

5  Enforcement Administration, an agency within the

6  executive branch of the government of the United

7  States.

8          On defendant's DEA registration renewal DEA

9  Form 224a the defendant stated that he had never had a

10  state professional license or controlled substance

11  registration revoked, suspended, denied, restricted, or

12  placed on probation.  However, the government would

13  introduce evidence that at the time that the defendant

14  made that statement it was false.  Defendant knew that

15  his medical license had been placed in a probationary

16  status in March of 2000.

17          In addition, the government would introduce

18  testimony that the defendant's false statements

19  regarding his medical license was material to DEA's

20  decisions and activities to renew the defendant's

21  registration.

22          THE COURT:  All right.  Thank you, Ms. Kerin.

23          Mr. Moos?  Mr. Moos, I'm looking at paragraph

24  24 of your petition to enter a plea of guilty.  I want

25  to ask you some questions about that.

1           Sometime around January of 2003 here in

2   Portland did you knowingly and willfully make a false

3   or fraudulent statement or representation of a material

4   fact within the jurisdiction of the Drug Enforcement

5   Administration, which is an agency within the executive

6   branch of the government of the United States?  Did you

7   do that?

8           THE DEFENDANT:  Yes, I did.

9           THE COURT:  And was that false representation

10  that you had never had a state professional license or

11  controlled substance registration revoked, suspended,

12  denied, restricted, or placed on probation, when, in

13  fact, you had been in a probationary status?

14          THE DEFENDANT:  Yes.  I was on probation.

15          THE COURT:  Okay.  Anything else you want to

16  cover, Counsel?

17          MS. KERIN:  No.  Thank you, Your Honor.

18          THE COURT:  Okay.  Mr. Sady, do you wish to

19  discuss anything with your client --

20          MR. SADY:  May I have a moment, Your Honor?

21          THE COURT:  -- before I ask him how he

22  pleads?

23          MR. SADY:  Thank you.

24          We're ready to proceed, Your Honor.

25          THE COURT:  All right.  Let me ask your

 1  client.  Is there anything you would like to discuss

 2  with your lawyer before I ask you how you plead to the

 3  charge?

 4              THE DEFENDANT:  No.  I'm satisfied with our

 5  discussion.

 6              THE COURT:  As to Count 3 of the indictment,

 7  how do you plead?  Guilty or not guilty?

 8              THE DEFENDANT:  Guilty.

 9              THE COURT:  I find the defendant fully

10  competent and capable of entering an informed plea and

11  his plea of guilty is a knowing and voluntarily plea

12  and I will accept it.

13              Now, I will set sentencing for Monday,

14  February 28th, 2011, at 9:30.  That's the 28th of

15  February, 9:30.

16              How does that time work for everyone?

17              MS. KERIN:  Fine.  Thank you, Your Honor.

18              THE COURT:  Okay.  Now, at this point there

19  is a request for release; is that correct, Mr. Sady?

20              MR. SADY:  There is, Your Honor.

21              THE COURT:  Okay.  I have a report from

22  Ms. Kolby of the US Pretrial Services.  It's dated

23  December 20th.

24              Do you have a copy of that, Mr. Sady?

25              MR. SADY:  Yes, Your Honor.

1            THE COURT:  Okay.  Now, the recommendation,

2   and I've talked with Ms. Kolby, is that based on the

3   present situation Pretrial Services recommends that

4   defendant be released under a number of conditions.

5   They base that request on the fact that the defendant

6   will have served nearly all of the potential custody

7   time he is facing.  He -- I understand that his parents

8   have indicated that he will and may reside with them at

9   their home in Grants Pass, Oregon, and they will

10  cooperate with the defendant's supervision.

11            So it appears that there is no reason not to

12  allow his release at this time under those conditions.

13            Have you looked at the conditions recommended

14  by Pretrial Services --

15            THE DEFENDANT:  Yes, I just got done.

16            THE COURT:  -- Mr. Sady?

17            MR. SADY:  Oh.  Yes, I have Your Honor.

18            THE COURT:  Do you have any objections to any

19  of those conditions.

20            MR. SADY:  No, Your Honor.

21            THE COURT:  All right.  Then it is -- I will

22  order that he be released under the special conditions

23  set forth in the letter of December 20th from

24  Ms. Kolby.

25            Ms. Kolby, would you prepare the order?

1          MS. KOLBY:  Yes, Your Honor.

2          THE COURT:  All right.  Anything else you

3  need to know, Ms. Kolby?

4          MS. KOLBY:  No, Your Honor.  Thank you.

5          THE COURT:  Well, there is the issue, I

6  think, of guidance and -- electronic guidance.

7          What's the government's position on that?

8          MS. KERIN:  Your Honor, one -- of course

9  we're not opposing the release of Mr. Moos.  However,

10 we believe that GPS or radio guidance monitoring on

11 Mr. Moos is appropriate, given the flight risk.  There

12 have been two magistrates that have found that Mr. Moos

13 presents a flight risk.

14         While I understand he has served almost all

15 of the time under the guideline range, there's

16 significant information that the government is unaware

17 of that related to his time in UAE and in China that

18 may affect the Court's and the government's position at

19 sentencing.  We are still concerned and believe that he

20 potentially poses a flight risk, and we ask that the

21 Court at least put electronic monitoring on the

22 defendant.

23         THE COURT:  Ms. Kolby, what's the

24 recommendation of Pretrial Services on this subject?

25         MS. KOLBY:  I don't believe that it's

 1  warranted at this point.  The location monitoring is

 2  typically designed to address a risk of danger, not

 3  necessarily nonappearance.  We typically would

 4  recommend it for someone who represents a risk of

 5  danger so we may monitor curfew or monitor when they

 6  may be out of their residence or if there's a certain

 7  area or a person that we don't want them to be around.

 8  The global positioning would help us to do that.

 9          As far as nonappearance, all it would really

10  accomplish is letting us know sooner if he cuts off the

11  bracelet or something to that effect.

12          THE COURT:  Given the circumstances, I'm not

13  going to impose a requirement of electronic monitoring

14  at this time.  If it's determined that there's any

15  concern or question whatsoever, you may apply to the

16  Court for an additional condition at that time.

17          MS. KOLBY:  Thank you, Your Honor.

18          THE COURT:  Okay.  Anything else that we need

19  to take care of?  I want to -- this -- I think that's

20  it.

21          Mr. Sady?

22          MR. SADY:  The last thing would be is if --

23  as the Court has heard, the United States Attorney's

24  Office is doing what it can to facilitate the release

25  regarding the Washington County matters.  If the Court

1  could recommend to the marshals that they take any

2  actions to facilitate that process, it would be much

3  appreciated.

4          THE COURT:  Well, based upon my decision that

5  he be released, I'm going to order that he be released

6  this afternoon.

7          He will, of course, be released to the

8  detainer from Washington County.  I've made a decision

9  that he is not a flight risk and that he's not a danger

10 at this point, and I would just recommend that same

11 conclusion to Washington County.  But that's their

12 decision.

13         MR. SADY:  Thank you, Your Honor.

14         THE COURT:  Okay.  Anything else?

15         MS. KERIN:  Thank you, Your Honor.  No.

16         THE CLERK:  Court is in recess.

17            (Hearing concluded:  2:29 p.m.)

18             C E R T I F I C A T E

19      I hereby certify that the foregoing is a true

20 and correct transcript from the stenographic record of

21 the proceedings in the foregoing matter.

22

23 /s/ Jill L. Erwin
   Jill L. Erwin              Date:  January 31st, 2011
24 Oregon CSR No. 98-0346

25

Northwest Certified Court Reporters, Inc.
503.406.2288 * * * 800.558.8077 * * * www.nwccr.com